UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL ALVARADO, individually, and on behalf of other members of the general public similarly situated; EMMA SARWAR, individually, and on behalf of other members of the general public similarly situated; SERGIO RODRIGUEZ, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SCHOLLE IPN PACKAGING, INC., an unknown business entity; SCHOLLE IPN CORPORATION, an unknown business entity; SCHOLLE PACKAGING, INC., an unknown business entity; SCHOLLE CORPORATION, an unknown business entity; SCHOLLE PACKAGING IMPREST, an unknown business entity; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 1:19-cv-01673-AWI-SKO<br><br>**ORDER ON PLAINTIFF'S MOTION TO REMAND**<br><br>(Doc. No. 10) |

Plaintiffs Raul Alvarado, Emma Sarwar and Sergio Rodriguez ("Plaintiffs") filed this putative class action in Merced County Superior Court alleging various wage-and-hour claims for failure to pay overtime, pay premiums for missed breaks, reimburse business expenses and such. Defendants Scholle IPN Packaging, Inc. ("Scholle IPN Packaging") and Scholle IPN Corporation removed the action to this court based on diversity jurisdiction, 28 U.S.C. § 1332(a), and the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). Doc. No. 1. Plaintiffs brought a motion to remand, which Defendants opposed. Doc. Nos. 10, 12 & 15. For the reasons set forth below, the

motion will be granted.

## **BACKGROUND**[1]

Defendants Scholle IPN Packaging and Scholle IPN Corporation manufacture packaging products. Plaintiffs Alvarado, Sarwar and Rodriguez worked for Defendants in California in various non-exempt roles for several years including and prior to 2018. Doc. No. 1-2 at 11:16-27.[2]

Plaintiffs allege that "Defendants engaged in a pattern and practice of wage abuse against their hourly-paid or non-exempt employees" in California that involved failing to pay Plaintiffs and other putative class members for overtime and missed or deficient meal and rest periods. Doc. No. 1-2 12:16-20. Further, Plaintiffs allege that Defendants failed to provide required reimbursement for business-related expenses, id. at 14:9-17; failed to furnish complete and accurate wage statements, id. at 13:27-14:8; and failed to make timely payment of all amounts due to employees upon discharge or resignation. Id. at 14:26-27. Finally, Plaintiffs allege that Defendants engaged in such conduct "intentionally and willfully," see, e.g., id. at 21:23-25, and as a matter of "corporate policy." See id. at 10:10-14.

Based on these allegations, Plaintiffs filed this putative class action in Merced County Superior Court on October 24, 2019, Doc. No. 1 at 7:14-19, alleging multiple claims under California's Labor Code and a claim under California's Unfair Competition Law on their own behalf and on behalf of a proposed class defined as "[a]ll current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California" in the four years prior to the filing of the Complaint. Doc. No. 1-2 at 4:26-28. Defendants removed the action to this Court on November 27, 2019 based on diversity of citizenship, 28 U.S.C. § 1332(a), and CAFA, 28 U.S.C. § 1332(d). Doc. No. 1. Plaintiffs filed a 1AC on December 20, 2019, Doc.

---

[1] This section is based on the Complaint. Doc. No. 1-2. A First Amended Complaint ("1AC") was filed in this Court on December 20, 2019. Doc. No. 7. The Court has not relied on allegations in the 1AC in deciding this motion, see Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc., 159 F.3d 1209, 1213 (9th Cir. 1998) ("Jurisdiction is analyzed based upon the pleadings filed at the time of removal without reference to any subsequent pleadings filed in the action."), but differences between the Complaint and the 1AC are not significant enough to affect the outcome of this motion, even assuming consideration of the 1AC is proper. See Benko v. Quality Loan Serv. Corp., 789 F.3d 1111, 1117 (9th Cir. 2015) (allowing consideration of amended pleadings for CAFA removal where "plaintiffs amend the complaint to explain the nature of the action for purposes of [] jurisdictional analysis").

[2] Unless otherwise indicated, all page citations to docketed papers are to the ECF page number in the stamp at the top of each page.

2

No. 7, and brought the instant motion to remand on January 3, 2020. Doc. No. 10.

## PLAINTIFFS' MOTION

*Plaintiffs' Arguments*

Plaintiffs move for remand pursuant to 28 U.S.C. § 1447(c) on the ground that Defendants have not met their burden to show that the total amount in controversy exceeds $5 million, as required for CAFA jurisdiction, or that the amount in controversy on Plaintiffs' individual claims exceeds $75,000. Doc. No. 10 at 2:8-17. Plaintiffs argue that "Defendants' calculations are based entirely upon self-serving assumptions that lack adequate evidentiary support" and are, thus, "tantamount to impermissible speculation." Id. at 6:11-13. Plaintiffs take issue, in particular, with Defendants' assertions as to workweeks, workdays, wages and the size of the putative class, as well as Defendants' assumptions as to the rates at which alleged Labor Code violations occurred. Id. at 6:20-7:8.

*Defendants' Opposition*

Defendants argue that their amount in controversy estimate for CAFA removal is based on reasonable estimates and adequately supported by facts set forth in declarations from Scholle IPN Corporation's Corporate Controller and Treasurer, Jay Goffin. Doc. No. 12, Part I. Further, they argue that Plaintiffs have never affirmatively taken the position that the CAFA amount in controversy is less than $5 million and have provided no evidence undercutting Defendants' amount in controversy calculations. Id. In short, Defendants contend that they are not "required to conduct a thorough internal investigation of each and every claim" at this point in the proceeding and that Plaintiffs are improperly "seek[ing] to capitalize on their vague and poorly defined [pleading]" to avoid removal. Id.

*Plaintiffs' Reply*

Plaintiffs argue on reply that Defendants have improperly attempted to shift the burden on this motion and that the "onus is on Defendants to present summary-judgment-type evidence" that justifies their amount-in-controversy calculations, particularly since "Defendants are in exclusive possession of documents and data relating to the putative class members." Doc. No. 15, Part I.

The Court notes that Defendants make no argument as to jurisdiction based on the

1  Plaintiffs' individual claims in the opposition, and that statements as to individual claims in the
2  notice of removal are mere allegations that, by Defendants own admission, are insufficient to
3  establish jurisdiction in opposition to a motion to remand. See Doc. No. 1, Part IV. Moreover,
4  Plaintiffs do not dispute that CAFA requirements as to class size and diversity have been satisfied.
5  See Doc. No. 10. The only issue before the Court on this motion, therefore, is CAFA's amount-in-
6  controversy requirement.

## LEGAL FRAMEWORK

8  Under 28 U.S.C. § 1441, "[a] defendant generally may remove an action filed in state court
9  if a federal district court would have had original jurisdiction over the action." Chavez v.
10 JPMorgan Chase & Co, 888 F.3d 413, 415-16 (9th Cir. 2018) (citing 28 U.S.C. § 1441(a) and
11 Gonzales v. CarMax Auto Superstores, LLC, 840 F.3d 644, 648 (9th Cir. 2016)).

12 Congress enacted CAFA "to permit a defendant to remove certain class or mass actions
13 into federal court." Ibarra v. Manheim Inv., Inc., 775 F.3d 1193, 1197 (9th Cir. 2015). Under
14 CAFA, district courts have original jurisdiction over class actions when there are at least 100 class
15 members, minimal diversity, and more than $5 million in controversy, exclusive of interest and
16 costs. Id. at 1195, 1197 (citing 28 U.S.C. § 1332(d)).

17 In a notice of removal, a defendant need only plausibly allege that the amount in
18 controversy exceeds $5 million. Dart Cherokee Basin Operating Co. v. Owens, 135 S. Ct. 547,
19 554 (2014). If the plaintiff contests those allegations in a motion to remand, however, "the court
20 decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has
21 been satisfied." Id. at 553-54.

22 The preponderance of the evidence standard means the "defendant must provide evidence
23 establishing that it is 'more likely than not' that the amount in controversy exceeds" $5 million.
24 Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996) (citation omitted). A
25 removing defendant is not obligated to "research, state, and prove the plaintiff's claims for
26 damages," Taylor v. United Rd. Servs., Inc., 313 F. Supp. 3d 1161, 1174 (E.D. Cal. 2018)
27 (quoting McCraw v. Lyons, 863 F. Supp. 430, 434 (W.D. Ky. 1994)), but a defendant must set
28 forth the "underlying facts supporting its assertion that the amount in controversy exceeds [the

4

1  statutory minimum]." Gaus v. Miles, Inc., 980 F.2d 564, 567 (9th Cir. 1992). Further, where a
2  defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof,
3  "those assumptions cannot be pulled from thin air but need some reasonable ground underlying
4  them." Ibarra, 775 F.3d at 1197, 1199.

5      "If a defendant fails to meet the requisite burden of proof, a court must remand for lack of
6  subject matter jurisdiction." Armstrong v. Ruan Transp. Corp., 2016 WL 6267931, at *2 (C.D.
7  Cal. Oct. 25, 2016); see also, Kelton Arms Condo. Owners Ass'n v. Homestead Ins. Co., 346 F.3d
8  1190, 1192 (9th Cir. 2003).

## DISCUSSION

10      As noted above Defendants have submitted two declarations from Scholle IPN
11  Corporation's Corporate Controller and Treasurer in connection with removal, one of which was
12  filed with the notice of removal and one of which was filed in opposition to Plaintiffs' remand
13  motion. Doc. Nos. 1-3 and 13. The declaration filed with the notice of removal purports to be
14  based on "employee data records" containing hire dates, job positions and separation dates, and
15  states that Scholle IPN Packaging had "no less than 400" non-exempt employees in California
16  who worked "approximately 150,000 workdays and 44,000 work weeks" at an average wage of
17  $17 per hour during the putative class period. Doc. No. 1-3 ¶¶ 9-10. Further, it states that at least
18  100 non-exempt employees in California were separated from Scholle IPN Packaging between
19  October 24, 2015 and November 27, 2019 (the date of the declaration) and that approximately 296
20  non-exempt employees were employed by Scholle IPN Packaging in California during that same
21  period. Id. ¶¶ 10-11.

22      The declaration filed with the opposition, for its part, states that Scholle IPN Packaging
23  "pays its non-exempt California employees on a weekly basis" and that all three Plaintiffs worked
24  "overtime hours in nearly every single workweek of their respective employment." Doc. No. 13 at
25  2. Defendants submit no other evidence relevant to amount-in-controversy determinations.

26      Plaintiffs argue that the declaration submitted with the removal notice should not be
27  credited because it lacks supporting documents and is based on records that, as described by
28  Goffin himself, do not contain the information required to determine average hourly pay, the total

5

1  number of workdays, or the total number of workweeks during the putative class period. Doc. No.
2  10, Part IV.A. Further, Plaintiffs contend that Goffin fails to provide a breakdown of how he
3  arrived at the numbers in the declaration and fails to provide information regarding shift-length,
4  total hours worked and so forth required to evaluate Defendants' amount-in-controversy
5  calculations. Id.

6  Defendants argue that supporting documents are not required and that "courts routinely
7  find declarations submitted by employers to be admissible evidence sufficient to establish that
8  CAFA's amount in controversy requirement is met." Doc. No. 12, Part III.B. According to
9  Defendants, a defendant is "not required to comb through its records to identify and calculate the
10 exact frequency of violations" and requiring defendants to produce employment, pay and
11 timekeeping records to establish amounts in controversy "would  improperly require defendants to
12 engage in costly discovery overlapping with the merits of [plaintiffs'] claim[s]." Id.

13 The Court agrees with Defendants that there is no hard-and-fast requirement for an
14 exhaustive reconstruction of Defendants' payroll history and that declarations such as those
15 provided by Goffin—as an executive with access to records and personal knowledge of the subject
16 matter in question—can properly be taken into consideration in deciding remand motions. See
17 Taylor v. United Rd. Servs., Inc., 313 F. Supp. 3d 1161, 1176 (E.D. Cal. 2018) (finding that
18 declarant's "personal knowledge of the business records to which he ha[d] access as part of his
19 duties as Vice President of Human Resources for Defendant provide[d] a sufficient foundation for
20 his testimony that the class consists of between 160 and 182 drivers") (citations and internal
21 quotation marks omitted); Jimenez v. Allstate Ins. Co., 2011 WL 65764, at *2–3 (C.D. Cal. Jan.7,
22 2011) (crediting declaration where declarant's statements were "based on her normal business
23 responsibilities and her personal review of [the] [d]efendant's business records" and finding that
24 there was "no need, under the circumstances presented, for [d]efendant to provide the business
25 records themselves"). The Court also agrees with Plaintiffs, however, that there is a disconnect
26 between the facts Goffin asserts and the types of records he claims to have reviewed, cf. Green v.
27 Staples Contract & Commercial, Inc., 2008 WL 5246051, at *4 (C.D. Cal. Dec. 10, 2008) (finding
28 fault with portion of declaration stating the number of workweeks in a putative class period where

1 defendant "provided no explanation for how it reached th[e] number"), and that Defendants fail to
2 provide certain information required to justify the amount in controversy calculations for their
3 claims.

*Amount in Controversy on Unpaid Overtime Claim*

5       Plaintiffs allege, for example, that "Defendants engaged in a pattern and practice of wage
6 abuse against their hourly-paid or non-exempt employees" in California that included failing to
7 pay them for overtime, Doc. No. 1-2 at 12:16-20, and that "Defendants intentionally and willfully
8 failed to pay overtime wages owed to Plaintiffs and the other class members." Id. at 16:17-18.

9       In the notice of removal, Defendants calculate the amount in controversy for Plaintiffs'
10 unpaid overtime claim as $2,244,000. Doc. No. 1 at 13:5-12. To reach this figure, they assume two
11 hours of alleged unpaid overtime compensation per "workweek" for 44,000 workweeks at time-
12 and-a-half. Id. at 13:9-12. Further, Defendants state in the opposition that the CAFA amount in
13 controversy would still be satisfied, in aggregate, assuming just one unpaid hour of overtime per
14 "workweek." Doc. No. 1 at 13:21-26.

15       Plaintiffs take the position that Defendants' estimates should not be credited because
16 Defendants "provide no supporting documentation" justifying their assumptions as to the
17 frequency of overtime violations, and because Defendants fail to show how workweeks are
18 structured, how many weeks a year putative class members worked or the typical length of shifts,
19 even though such information is uniquely in Defendants' possession. Doc. No. 10, Part IV.A.2.
20 Defendants, on the other hand, argue that Plaintiffs fail to provide any evidence refuting
21 Defendants' assumptions and that Plaintiffs' broad allegations make Defendants' assumptions as
22 to overtime violations "plausible and appropriate." Doc. No. 12, Part III.C.i.

23       The Court agrees with Defendants that Plaintiffs' broad allegations about unpaid overtime
24 as part of an intentional "pattern and practice" of "wage abuse" reasonably support the assumption
25 that overtime infractions occurred frequently. Cf. Feao v. UFP Riverside, LLC, 2017 WL
26 2836207, at *5 (C.D. Cal. June 29, 2017). The Court cannot, however, adopt Defendants'
27 assumptions as to the number of overtime hours per workweek because, as Plaintiffs note,
28 Defendants never define "workweek." Further, back-of-the-envelope math dividing the number of

workdays asserted by Defendants—150,000—by the number of workweeks asserted by Defendants—44,000—yields a workweek of just 3.4 days. That precludes an inference that conventional five-day workweeks were the norm, and there is no way to glean from the papers how many hours a workweek entailed during the putative class period.

In short, expressing the assumed overtime violation rate as a ratio of "overtime hours/workweek" without providing the length of the typical workweek makes it impossible for the Court to assess the reasonableness of Defendants' assumption as to the rate of overtime violations. Consequently, the Court cannot credit Defendants' amount-in-controversy estimate for overtime claims or apply it in determining whether the CAFA jurisdictional threshold has been met. See Contreras v. J.R. Simplot Co., 2017 WL 4457228, at *3 (E.D. Cal. Oct. 6, 2017) (rejecting assumption of "1 hour of overtime per employee, per week" and declining to credit defendant's estimate of overtime damages in CAFA amount-in-controversy analysis).

*Amount in Controversy on Meal and Rest Period Claims*

As to meal and rest period claims, similarly, Plaintiffs allege that Defendants failed to provide putative class members with legally required meal breaks on shifts lasting five hours or more and on shifts lasting ten hours or more,  Doc. No. 1-2 at 17:15-27, and that Defendants failed to provide legally required rest breaks every four hours. Id. at 19:15-23. Further, Plaintiffs allege that Defendants failed to pay putative class members for missed breaks due to a "corporate policy" and "a pattern and practice of wage abuse." Id. at 10:10-14 & 12:16-20.

In the notice of removal, Defendants estimate the amount in controversy on meal period claims at $1,275,000 and the amount in controversy on rest period claims at $1,275,000 based on an assumption that 50% of meal periods and 50% of rest periods were compromised in some fashion. Doc. No. 1 at 7:21-8:26. And in the opposition, Defendants assert that the cumulative amount in controversy required for CAFA removal would still be met assuming one meal period violation and one rest period violation per "workweek." Doc. No. 12 at 18:8-17.

Plaintiffs argue that Defendants' assumption of a 50% violation rate is unsupported by documents and is "based on a speculative estimate of approximate workweeks that does not account for part-time v. full-time employees." Doc. No. 10 at 16:4-10. Similarly, Plaintiffs assert

8

that Defendants fail to show that shifts of putative class members were "of sufficient length to mandate the provision of meal and rest periods." Id. at 16:14-16. Defendants, for their part, argue that the assumption of a 50% violation rate is supported by Plaintiff's "broad and limitless" allegations and is conservative in comparison to violation rates approved by other Courts. Doc. No. 12, Part III.C.iii.

The Court agrees with Plaintiffs. Even if the Court were to adopt Defendants' proposed 50% violation rate, the amount-in-controversy calculation is impossible without some reliable estimate of how many meal and rest periods are at issue. Inasmuch as the number of meal and rest periods is a direct function of shift length,[3] the mere statement that there were 150,000 workdays during the putative class period is useless. If the average shift length were four hours, six hours, eight hours, 10 hours or what have you, Defendants should have made some showing to that effect. Instead, they have left the Court guessing as to information that is presumably at their fingertips and obviously germane to removal. See Carranza v. Nordstrom, Inc., 2014 WL 10537816, at *9 (C.D. Cal. Dec. 12, 2014) (in determining whether a party has met its burden of showing that a court has subject matter jurisdiction, "it is proper to consider which party has access to or control over the records and information required to determine whether the amount in controversy requirement is met").  Similarly, the Court cannot credit the alternative "1 violation per workweek" formulation proffered in the opposition because, as set forth above, "workweek" is not defined by Goffin and what little information Goffin does provide appears to indicate an unconventional workweek.

Consequently, the Court will not consider Defendants' damages estimates for meal and rest period claims in determining whether the CAFA amount-in-controversy requirement has been satisfied.

*Remaining Claims and Attorneys' Fees*

In the notice of removal, Defendants assert that the amounts in controversy in connection with Plaintiffs' other claims are $924,000 for failure to pay at least minimum wage for all hours

---

[3] See Doc. No. 1-2 at 17:15-27 and 19:15-23.

9

1 worked, Doc. No. 1 at 13:13-20; $408,000 for failure to make timely payment of all amounts due
2 upon separation of employment, id. at 14:27-15:13; $1,184,000 for failure to provide correct and
3 accurate wage statements, id. at 15:14-16:12; and $40,000 for unreimbursed business expenses. Id.
4 at 16:13-21. The amounts asserted as to each of these claims in Defendants' opposition are the
5 same or less. Doc. No. 12, Part III.C.

6 Even crediting these estimates in full, the aggregate amount in controversy would come to
7 $2,556,000. As Defendants note, 25% of recovery is the benchmark for attorneys' fees awards on
8 class action judgments in this circuit, and thus there is no reasonable estimate of attorney fees that
9 could bring the amount in controversy up to the $5 million CAFA threshold. It is therefore
10 unnecessary to further analyze attorneys' fees or estimates for Plaintiffs minimum wage, late
11 payment, wage statement and business expense claims to conclude that Defendants have not met
12 their burden to show that CAFA's amount-in-controversy requirement is satisfied here. See
13 Taylor, 313 F. Supp. 3d at 1181–82 (finding that the "Court need not reach the issue of how
14 attorneys fees apply" where a defendant "has not established by a preponderance of the evidence
15 that the underlying amount in controversy on which any 25% fee would be based is at least $4
16 million"); Contreras, 2017 WL 4457228, at *4.

### **CONCLUSION**

18 For the foregoing reasons, the Court finds that Defendants have failed to carry their burden
19 to show that the amount-in-controversy requirement for CAFA jurisdiction has been satisfied and
20 will grant Plaintiffs' motion to remand.
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28 //

# **ORDER**

Accordingly, IT IS HEREBY ORDERED as follows:

1. Plaintiffs' motion to remand (Doc. No. 10) is GRANTED;
2. The Clerk of this Court is DIRECTED to serve a copy of this order on the Merced County Superior Court;
3. The Clerk of this Court is DIRECTED to close this case, as the matter has been remanded and is returned to the jurisdiction of the Merced County Superior Court.

IT IS SO ORDERED.

Dated:   November 6, 2020

SENIOR DISTRICT JUDGE